UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:           CIRCUIT CITY STORES, INC. *et al.*,                    Case No. 08-35653-KRH
                                                                        Chapter 11
                 Debtors.
_____

ALFRED H. SIEGEL,

                 Plaintiff,

v.                                                                      APN 15-03477-KRH

CALIFORNIA SELF-INSURERS' SECURITY FUND
and CHRISTINE BAKER,

                 Defendants.
_____

# MEMORANDUM OPINION

This Adversary Proceeding concerns excess letter of credit proceeds held by the California Self-Insurers' Security Fund (the "Fund") to which plaintiff, Alfred H. Siegel, Trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Liquidating Trust"), claims the Liquidating Trust is entitled. The Fund, which allegedly holds the excess letter of credit proceeds, and Christine Baker, solely in her capacity as Director of the California Department of Industrial Relations (the "Department of Industrial Relations" together with the Fund, the "Defendants"), filed motions to dismiss the Trustee's Complaint initiating this adversary proceeding (the "Complaint") under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (the "Motions").[1]

---

[1] Federal Rule of Civil Procedure 12 is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012.

On March 23, 2016, the Court conducted a hearing on the Motions (the "Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement. After considering the applicable statutory authority, the case law, the pleadings, and the arguments of counsel, the Court now concludes that the Motions should be denied. This Memorandum Opinion sets forth the Court's analysis and conclusions in support of its ruling.[2]

## Factual Background

This Adversary Proceeding arises in connection with the bankruptcy cases filed by Circuit City Stores, Inc., and a number of related entities (the "Debtors") on November 10, 2008 (the "Petition Date").[3] Circuit City was a national retailer of consumer electronics with operations across the United States, including the state of California.

Circuit City continued to operate its national retail business in the ordinary course for a brief period following the Petition Date. On January 16, 2009, the Court authorized Circuit City to cease its business operations and liquidate its assets. To that end, the Court approved an agency agreement that allowed professional liquidators to conduct going out of business sales at all of Circuit City's remaining stores from January 17, 2009 to March 8, 2009 (the "Agency Agreement"). A Second Amended Joint Plan of Liquidation was filed on August 9, 2010, and an order confirming the Debtors' Modified Amended Second Joint Plan of Liquidation (the "Liquidating Plan") was entered on September 14, 2010. The Liquidating Plan substantively consolidated the Debtors' bankruptcy estates and established the Liquidating Trust to collect, administer, distribute, and liquidate all of the Debtors' remaining assets under Chapter 11 of the

---

[2] The Court is not required to state findings or conclusions upon entry of an interlocutory order ruling on a motion under Federal Rule of Civil Procedure 12. *See* Fed. R. Bankr. P. 7052.

[3] By Order entered November 10, 2008, the Court approved the joint administration of the related bankruptcy cases. Order Granting Motion for Joint Administration, *In re Circuit City Stores, Inc.*, No. 08-35653 (Bankr. E.D. Va. Nov. 10, 2008) (ECF No. 77).

2

Bankruptcy Code. The Liquidating Plan generally provided for the transfer of any cause of action held by any of the Debtors to the Liquidating Trust.[4] Plaintiff, Alfred H. Siegel, was appointed as Trustee for the Liquidating Trust and he continues to serve in that capacity (the "Trustee").

Circuit City had extensive operations throughout the state of California prior to the Petition Date. Under California law, Circuit City was required to secure the payment of any workers' compensation obligations by obtaining either a workers' compensation insurance policy or by obtaining a certificate of consent to self-insure from the Department of Industrial Relations. *See* Cal. Lab. Code § 3700. A certificate of consent to self-insure could only be obtained if the employer adequately secured its workers' compensation liabilities through some combination of cash, securities, surety bonds, or irrevocable letters of credit. *See* Lab. Code § 3701 (effective to Dec. 31, 2012). Prior to 2013, the amount of such bond was required to be 135% of the estimated future liability for workers' compensation obligations.[5] *Id.* Once the security is posted, an employer loses "all right, title and interest in, and any right to control, all assets or obligations posted or left on deposit as security." *Id.*

If the Director of the Department of Industrial Relations (the "Director") should determine that a self-insured employer cannot pay its workers' compensation obligations, then the Director is authorized to assume the outstanding workers' compensation obligations for that self-insured employer and obtain "immediate possession" of the posted security to pay the obligations so assumed. Lab. Code § 3701.5. In instances where the Director may seize more

---

[4] Article I.B.1.21 of the Liquidating Plan details the full scope of all of the causes of action transferred to the Liquidating Trust.

[5] The California Labor Code was amended effective January 1, 2013. The subsequent amendments to the California Labor Code are of no moment to the dispute in the case at bar. The Court will apply the California Labor Code in effect as of the Petition Date, and all citations herein will be to the pre-amended version of the California Labor Code in effect as of the Petition Date.

3

security than is actually necessary to satisfy the outstanding workers' compensation obligations of a self-insured employer, the Director is required to return the excess proceeds. Lab. Code § 3701.3. California law provides that disputes involving the return of excess proceeds be resolved by the Director. Lab. Code § 3701.5. A director's decision can be appealed to an appropriate California superior court. *See id.*

Prior to the Petition Date, Circuit City had elected to self-insure its workers' compensation obligations under California law. To secure its workers' compensation obligations in compliance with California law, Circuit City posted an irrevocable standby letter of credit issued by Bank of America N.A., as security, in the amount of $14,119,256 (the "Letter of Credit").[6] No party disputes that the Letter of Credit was issued for an amount equal to 135% of Circuit City's estimated future worker's compensation liability, as required by California law. *See* Lab. Code § 3701(b). The Letter of Credit remained in place after the Petition Date. When the Court approved the Agency Agreement allowing Circuit City to conduct its going-out-of-business sales, the liquidators assumed all of Circuit City's future workers' compensation obligations under sections 4.1(b) and 10.3 of the Agency Agreement. *See* Order Approving Agency Agreement, *In re Circuit City Stores Inc.*, No. 08-35653 (Bankr. E.D. Va. Jan. 16, 2009) (ECF No. 1634). Accordingly, Circuit City incurred no obligation for workers' compensation after January 16, 2009.

On April 3, 2009, well after the store-closing, going-out-of-business sales had been completed and well after Circuit City had concluded all business operations, the Director

---

[6] A letter of credit is a definite commitment made by an issuer (usually a bank) to pay a designated amount to a third party beneficiary on behalf of the issuer's customer upon the documentary presentation specified in the letter of credit. *See, e.g.*, U.C.C. § 5-102(a)(10). Letters of credit involve three separate and distinct contracts: the underlying obligation owed by the customer to the beneficiary; the customer's contract with the issuer; and the issuer's agreement to pay the beneficiary. *See generally Faulkner v. EOP–Colonnade of Dallas (In re Stonebridge Techs., Inc.)*, 291 B.R. 63, 69-70 (Bankr. N.D. Tex. 2003).

instructed the Fund to assume Circuit City's outstanding workers' compensation obligations. The Fund drew down the full amount of the Letter of Credit and began to administer the outstanding workers' compensation claims. Throughout, 2009 and 2010, the Fund filed a number of proofs of claim in the Debtors' bankruptcy case seeking $29 million on account of the assumed workers' compensation obligations. Although the Fund admitted that it had only actually disbursed $1.5 million to Circuit City workers' compensation claimants, it nonetheless maintained that it was an undersecured creditor because the Letter of Credit would be insufficient to cover Circuit City's outstanding workers' compensation obligations. The proofs of claim were filed pursuant to the California Labor Code. On February 25, 2011, the Trustee objected to all of the Fund's proofs of claim on grounds that they were unproven contingent claims, and that any amount due to the Fund could be satisfied by the proceeds from the Letter of Credit. The parties then negotiated over the claims for several years.

On November 20, 2015, the Court approved a stipulation between the Fund and the Trustee whereby the Fund agreed to withdraw all of its proofs of claim with prejudice (the "Stipulation"). The Stipulation included a provision that stated "[f]or the avoidance of doubt nothing herein waives, releases, or has an effect on claims of the estate held by the Trust that can be asserted against the Fund or any potential defenses thereto." *See* Order Approving Stipulation, *In re Circuit City Stores, Inc.*, No. 08-35653 (Bankr. E.D. Va. Nov. 20, 2015) (ECF No. 13795).

On December 23, 2015, the Trustee commenced this Adversary Proceeding to recover the excess proceeds from the Letter of Credit that were not needed to satisfy the Circuit City workers' compensation obligations, and other related claims. Count I of the Complaint seeks declaratory relief against the Defendants that any excess proceeds are property of the Debtors'

5

bankruptcy estate under § 541 of the Bankruptcy Code and should be turned over to the Trustee. Count II of the Complaint seeks sanctions under § 105(a) of the Bankruptcy Code against the Fund for filing excessive proofs of claim. Counts III, IV, and V of the Complaint seek recovery against the Defendants for unjust enrichment, unfair business practices, and abuse of discretion under § 105(a) of the Bankruptcy Code and applicable California law.

The Defendants' Motions under Rule 12(b)(1) and (b)(6) advance three arguments. First, the Defendants allege this Court lacks subject matter jurisdiction over this Adversary Proceeding because the Trustee has not exhausted his administrative remedies under the California Labor Code. Second, the Defendants allege the Complaint fails to state a claim upon which relief can be granted for the same reason. Third, the Defendants allege the Complaint fails to state a claim upon which relief can be granted because the excess Letter of Credit proceeds are not property of the Debtors' bankruptcy estate as a matter of law.

## Subject Matter Jurisdiction

Rule 12(b)(1) requires a court to dismiss a matter if it lacks subject matter jurisdiction. Dismissal is not discretionary. "When a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The jurisdictional facts are not in dispute in this case. In such situations, the Court of Appeals for the Fourth Circuit instructs that "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

The Defendants argue that this Court lacks subject matter jurisdiction over the Complaint because the Trustee has not exhausted his administrative remedies as required by § 3701.5(g) of the California Labor Code. *See* Lab. Code § 3701.5(g) ("Disputes concerning the . . . return of

6

all of any portion of the security deposit, or any liability arising out of the posting . . . shall be resolved by the director."). The Defendants' argument is without merit.

Under 28 U.S.C. § 1334, the district courts of the United States have original and exclusive jurisdiction "of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. The United State District Court for the Eastern District of Virginia has referred all proceedings under 28 U.S.C. § 1334 to this Court under its General Order of Reference dated August 15, 1984. Accordingly, this Court may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of [title 28]." 28 U.S.C. § 157(b)(1).

"A proceeding that is not based specifically on title 11, but would be pointless in the absence of the bankruptcy case, *arises in* a bankruptcy case." *Bradley v. Hamlin (In re Bradley)*, No. 07-31896, 2007 WL 3469721, at *1 (Bankr. E.D. Va. Nov. 14, 2007); *see Wellington Apartment, LLC v. Clotworthy (In re Wellington Apartment, LLC)*, 353 B.R. 465, 469 (Bankr. E.D. Va. 2006) (describing "arising under" jurisdiction). Matters concerning the administration of a bankruptcy estate, the allowance or disallowance of claims (including the determination of contingent claims), counterclaims by the estate against persons filing claims against the estate, and proceedings affecting liquidation of property of the estate are all core proceedings that arise in a bankruptcy case. 28 U.S.C. § 157(b)(2). Bankruptcy courts have subject matter jurisdiction to adjudicate all core proceedings arising in a case under title 11. 28 U.S.C. § 157(b)(1); *see In re Garnett*, 303 B.R. 274, 276 (E.D.N.Y. 2013) (explaining the subject matter jurisdiction of bankruptcy courts).

7

Count I seeks a determination that the alleged excess letter of credit proceeds are property of the bankruptcy estate. The commencement of a bankruptcy case creates an estate comprised of all legal and equitable interests of the debtor in property wherever located. 11 U.S.C. § 541(a). This Court has exclusive jurisdiction of all property of the bankruptcy estate. 28 U.S.C. § 1334(e). What constitutes property of a bankruptcy estate is ultimately a question of federal bankruptcy law. This Court has subject matter jurisdiction over Count I.

Similarly, Count II of the Complaint concerns matters involving the administration of the bankruptcy estate. The Trustee contends that the Fund purposely filed excessive proofs of claim against the estate that the Fund knew were grossly inflated. The Trustee seeks damages resulting from the inordinate and unnecessary administrative burdens that were thereby placed upon the Liquidation Trust. The Court has jurisdiction over all matters of estate administration, including the allowance and disallowance of claims against the bankruptcy estate. 28 U.S.C. § 157(b)(2). This Court has subject matter jurisdiction over Count II.

Counts III, IV, and V of the Complaint raise claims arising under state law. The Court has subject matter jurisdiction over these claims because they are related to the bankruptcy case. *See* 28 U.S.C. § 1334(b). Not only are the causes of action "property of debtors' estate," but also they would directly affect the distributions under the Liquidating Plan, and have a "close nexus" to this bankruptcy case. *In re Kirkland*, 600 F.3d 310, 317 (4th Cir. 2010) (citing *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836-37 (4th Cir. 2007)) ("For 'related to' jurisdiction to exist at the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process – there must be a close nexus to the bankruptcy plan or proceeding."). Furthermore, the Fund consented to the core jurisdiction of this Court by filing its proofs of

8

claim and otherwise participating in the Debtors' bankruptcy case.[7] This Court has subject matter jurisdiction over Counts III, IV, and V of the Complaint. 28 U.S.C. § 157(b)(2)(C).

The Defendants do not really appear to contest that each of the Trustee's claims arise under or in the Circuit City bankruptcy case or are otherwise related to it. Instead, the Defendants argue that this court lacks subject matter jurisdiction over all five of the Trustee's claims because the Trustee failed to exhaust his administrative remedies under California state law. State law cannot divest a federal court of its subject-matter jurisdiction. All of the cases the Defendants cite involve a *federal* (not state) exhaustion of administrative remedies requirement that precluded adjudication of a *federal* cause of action. But even those cases did not hold the exhaustion of administrative remedies requirement to be jurisdictional. Rather, in the federal context, the failure to exhaust administrative remedies must be asserted as an affirmative defense. *See Pueschel v. Peters*, 340 Fed. Appx. 858, 861 (4th. Cir. 2004) ("[A]n exhaustion defense is not jurisdictional.").

The Defendants fail to cite any case where a state administrative exhaustion requirement prohibited a bankruptcy court from exercising the subject matter jurisdiction granted to it by Congress. Accordingly, the Court will deny the Defendants' Motions to dismiss the Complaint under Rule 12(b)(1).

### Adequacy of the Claim for Relief

A pleading that states a claim for relief must contain a "short and plain statement of the

---

[7] The ramifications of filing a proof of claim include acknowledgment of the court's jurisdiction to adjudicate the claim itself as well as related counterclaims. *See EXDS, Inc. v. RK Electric Inc. (In re EXDS, Inc.)*, 301 B.R. 436 (Bankr. D. Del. 2003) (holding that (1) by filing proof of claim, creditor submitted to equity jurisdiction of bankruptcy court and lost whatever right to jury trial it would otherwise have; and (2) subsequent withdrawal by creditor of its proof of claim could not divest bankruptcy court of jurisdiction or reinstate whatever jury trial rights creditor had relinquished). The Stipulation that permitted the Fund to withdraw its proofs of claim with prejudice provided that the withdrawal would have no effect on the claims of the estate held by the Liquidating Trust against the Fund and did not serve to divest this Court of its subject matter jurisdiction.

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[8] For a complaint to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss "a judge must accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, a court "need not accept the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991)). In ruling on a motion to dismiss, a court can consider documents attached to the motion to dismiss and the complaint "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

The Defendants advance two arguments under Rule 12(b)(6). First, the Defendants contend that, as the Trustee has not exhausted his administrative remedies, the Complaint fails to state a claim for relief. Second, the Defendants maintain that any excess Letter of Credit proceeds are not property of the Debtors' bankruptcy estate as a matter of law. The Defendants conclude, therefore, the Complaint must be dismissed.

The Defendants' first argument suggests that, in spite of this Court's clear subject matter jurisdiction over all the claims in the Complaint, the Director of the California Department of Industrial Relations must resolve these claims instead of this Court. The Court is not aware of any preemption doctrine that would prevent this Court from resolving the Trustee's claims. The Defendants have failed to cite any binding authority to that effect. But even if any preemption

---

[8] Federal Rule of Civil Procedure 8 is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7008.

provision did apply, the Defendants have clearly waived their exhaustion defense.

The Defendants argue that the California Labor Code provides the exclusive remedy for the return of any excess letter of credit proceeds. Defendants contend that any dispute resolving the "return of all or any portion of the security deposit, or any liability arising out of the failure to post security, or adequacy of the security . . . shall be resolved by the director." Lab. Code § 3701.5(g). The Defendants maintain that this provision in California law preempts this Court's ability to administer property of the estate. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1952 (2015) (Roberts, J., dissenting) ("Defining what constitutes the estate is the necessary starting point of every bankruptcy; a court cannot divide up the estate without first knowing what's in it."). The two cases advanced by the Defendants in support of their position are readily distinguishable from the facts presented in the Complaint now before the Court.

In *Neuner v. Horizon Blue Cross Blue Shield of New Jersey*, the bankruptcy judge required the plaintiff to exhaust his administrative remedies in pursuing his state law breach of contract claims that arose under a state health care plan. *Neuner v. Horizon Blue Cross Blue Shield of N.J. (In re Lymecare, Inc.)*, 301 B.R. 662, 674-79 (Bankr. D.N.J. 2003). But this ruling came after the court had undertaken a fact-intensive analysis that found that the debtor had already resorted to the administrative process, which was well underway. *Id.* The decision rested on considerations of judicial economy – not on a state law preemption mandate. In the case at bar, the claims in the complaint involve federal causes of action, and the judicial economy concerns of the *Neuner* court are not present here.

*Prime Healthcare Management Inc. v. Valley Health Care System* involved confirmation of a plan of adjustment advanced by a California local health care district under Chapter 9 of the Bankruptcy Code. *See Prime Healthcare Mgmt v. Valley Health Sys. (In re Valley Health*

11

*System)*, 429 B.R. 692 (Bankr. C.D. Cal. 2010). The bankruptcy court refused to adjudicate certain claims brought by non-debtor parties under the California Environmental Quality Act (CEQA) in the context of a challenge to plan feasibility. *Id.* at 740-42. The bankruptcy court said that the non-debtor parties should first exhaust their administrative remedies under the CEQA because the CEQA had an exhaustion requirement. *Id.* at 742. The court held that it would confirm the debtor's Chapter 9 plan over the feasibility objection raised by the non-debtor parties. *Id.* However, in the case at bar, the Defendants are seeking to assert the exhaustion defense against the Debtors to prevent this Court from adjudicating the Trustee's federal causes of action.

The California exhaustion of administrative remedies provision set forth in Labor Code § 3701.5 does not require this Court to defer to the Director of the California Department of Industrial Relations in defining what constitutes the bankruptcy estate because the Trustee's claims do not solely arise under the California Labor Code. Instead, the Trustee's claims primarily arise under federal bankruptcy law. *See In re Univ. Med. Ctr.*, 973 F.2d 1065, 1073-74 (3d Cir. 1992) (declining to apply administrative exhaustion requirement for Medicare related claims when cause of action arose under the Bankruptcy Code); *In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1154 (9th Cir. 1991) ("[W]here there is an independent basis for bankruptcy court jurisdiction, exhaustion of administrative remedies pursuant to other jurisdictional statutes is not required."); *In re Drexel Burnham Lambert Grp. Inc.*, 120 B.R. 724, 739 n.17 (Bankr. S.D.N.Y. 1990) ("Because the bankruptcy court has jurisdiction over property of the estate, the principle of exhaustion of administrative remedies is not applicable.").

But even if the California exhaustion of administrative remedies provision did somehow apply, the Court finds that the Defendants have waived the defense. "[F]ailure to exhaust

12

administrative remedies is an affirmative defense . . . ." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199 (2007)). As such, an exhaustion defense can be waived. *See Pueschel v. Peters*, 340 Fed. Appx. 858, 861 (4th Cir. 2009) (citing *Johnson v. Testman*, 380 F.3d 691, 695 (2d. Cir. 2004)) ("Because an exhaustion defense is not jurisdictional, it can be waived.").

The Fund effectively filed a complaint against the Debtors when it filed its proofs of claim in the Debtors' case. *See Shaia v. Taylor, (In re Connelly)*, 476 B.R. 223, 230-31 (Bankr. E.D. Va. 2012); *Kline v. Zueblin, (In re Am. Exp. Grp. Intl' Servs. Inc.)*, 167 B.R. 311, 313 (Bankr. D.C. 1994) (stating a proof of claim is analogous to a complaint). The Trustee filed an objection to the Fund's proofs of claims thus initiating a contested matter under Federal Rule of Bankruptcy Procedure 9014.

When the Fund filed its proofs of claim in this bankruptcy case the Fund availed itself of the laws and protections of this Court in order to receive payment from the Debtors' bankruptcy estate through the bankruptcy proceeding. The Fund cannot now require the Trustee to resolve any payment the Liquidating Trust believes it is owed through the administrative remedy process in California. The riders attached to the Fund's proofs of claim specifically stated that they were filed pursuant to Labor Code § 3701.5 – the very statute the Fund now seeks to use to assert its exhaustion defense. The Fund cannot have it both ways – asserting it can receive payment through this Court while conversely claiming that any payment or claim asserted by the Trustee must be resolved by the state administrative process. This position is simply untenable. *See Anderson v. FDIC*, 918 F.2d 1139, 1143 (4th Cir. 1990) ("To allow the FDIC to participate in the estate without subjecting itself to any liability it has to the trustee would be one sided.") (internal quotation marks omitted). Other cases have similarly held that filing a proof of claim waives a

13

claimant's right to assert an exhaustion defense. *See, e.g.*, *Ashbrook v. Block*, 917 F.2d 918, 923 (6th Cir. 1990) (holding no exhaustion requirement under the Federal Tort Claims Act after the government files a proof of claim); *In re Best Prods. Co.*, No. 93-1115, 1994 WL 141970, *2-3 (Bankr. S.D.N.Y. Apr. 20, 1994) (filing proofs of claim waives exhaustion requirement under Financial Institutions, Reform, Recovery and Enforcement Act).

The fact that the Fund later withdrew its proofs of claim is of no moment. The general rule is that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (quoting *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33, 58 (1989)). It follows that a creditor cannot seemingly un-pull the trigger of this Court's equitable power by withdrawing its proof of claim. *See In re EXDS, Inc.*, 301 B.R. 436, 440 (Bankr. D. Del. 2003) ("I do not believe that a creditor can, for strategic reasons, reverse the result triggered by filing a proof of claim by later withdrawing the claim.").[9]

The Defendants' second argument for dismissal under Rule 12(b)(6) is that the excess Letter of Credit proceeds cannot be property of the estate as a matter of law. The Court rejects the Defendants' arguments and finds that to the extent there are any excess proceeds, they are clearly property of the Debtors' bankruptcy estate. *See* 11 U.S.C. § 541.

The California statute in effect at the time of Circuit City's bankruptcy provided that: "The director shall return to a private self-insured employer all amounts determined, in the

---

[9] The Fund and the Trustee acknowledged as much. The parties understood that Federal Rule of Bankruptcy Procedure 7041 applies in any contested matter. *See* Fed. R. Bankr. P. 9014(c). Accordingly, the Fund needed Court approval to withdraw its proofs of claim. *See* Fed. R. Bankr. P. 7041; Fed. R. Civ. P. 41(a)(2). On November 20, 2015, the Court entered an order approving a stipulation that authorized the Fund to do so. The Stipulation recited "the Trust has informed the Fund that the Trust believes it holds claims of the estate against the Fund for acts and omissions relating to the Claims." The Stipulation further expressly provided that "nothing herein waives, releases or has an effect on the claims of the estate held by the Trust that can be asserted against the Fund or any potential defenses thereto." *See* Order Approving Stipulation, *In re Circuit City Stores, Inc.*, No. 08-35653 (Bankr. E.D. Va. Nov. 20, 2015) (ECF No. 13795).

14

director's discretion, to be in excess of that needed to assure the administration of the employer's self-insuring, including legal fees, and the payment of any future claims." Lab. Code § 3701.3. The Defendants cite a number of cases and argue that this statute merely gives the Trustee a contingent chose in action and not a true property interest protected by § 541. The Court disagrees. To the extent there are excess proceeds, the Trustee is entitled to those proceeds and nothing in the Bankruptcy Code or California law restricts that right.[10]

The Defendants' reliance upon *In re McLean Trucking Co.* is misguided. The issue presented in *McClean Trucking Co.* was whether the debtor had a sufficient property interest in a Letter of Credit to challenge the independence principle and enjoin the Fund from collecting a surety bond written by an insurance company solely in favor of the Department of Industrial Relations. *In re McClean Trucking Co.*, 74 B.R. 820 (Bankr. W.D.N.C. 1987) (finding that the debtor had no interest in a surety bond when it had no right to payment "under any circumstance").

Under the "independence principle" that applies generally to letters of credit, an issuer's obligation to the letter of credit beneficiary is independent from any obligation between the beneficiary and the issuer's customer. The issuer must honor the letter of credit upon a proper documentary presentation by the beneficiary. The issuer's obligation to pay under the letter of credit is not affected by any disputes between the beneficiary and the customer. As the letter of credit evidences the obligation of the issuer, the letter of credit and its proceeds are not considered as part of the bankruptcy estate and disbursement is not subject to the automatic stay.

---

[10] In 2013, § 3701.3 was amended to cut off the right of any self-insured entity to have the excess proceeds of collateral returned after a default on the part of the self-insured entity. The Defendants argue that the 2013 version of the statute should apply and that Trustee's right to recover excess proceeds that existed prior to 2013 has been eliminated. The Bankruptcy Code provides, however, that property of the estate is determined as of the Petition Date. 11 U.S.C. § 541(a). Any attempt by California to retroactively seize property of the estate by application of the amended version of § 3701.3 would clearly violate the automatic stay in § 362(a). 11 U.S.C. § 362; *see supra* n.5.

The dispute here, however, does not concern whether Bank of America should have funded the letter of credit. Bank of America complied with the letter of credit. The funds were properly disbursed. The independence principle is not being challenged by the Trustee. The independence principle protects against any challenge to the distribution under the letter of credit. It does not affect claims respecting the underlying obligations between the customer and the beneficiary. *See Demczyk v. Mutual Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 827 (6th Cir. 1997) ("It is one thing to attempt to prevent the distribution of the proceeds of a letter of credit, an attempt the doctrine of independence is designed to prevent; but it is quite another to bring an action on the underlying contract that created the letter of credit.").

Just as Circuit City had no right to stop the Fund from initially drawing on the Letter of Credit, the debtor in *McClean Trucking Co.* had no right to stop the collection of the surety bond. However, the court in *McClean Trucking Co.* did note that any excess proceeds from a letter of credit or surety bond "would provide a self-insurer with a contingent right or interest which would become property of the estate." *McClean Trucking Co.*, 74 B.R. at 827.

Similarly, *In re Challenge-Cook Bros.* does not support the Defendants' position. *In re Challenge-Cook Bros.*, No. 97-3259, 1998 WL 34000001 (Bankr. N.D. Ohio June 1, 1998). In *Challenge-Cook*, the Bankruptcy Court for the Northern District of Ohio interpreted the same provision of the California Labor Code as in the case at bar. The issue presented was whether a prepetition security interest held by a secured lender attached to excess letter of credit proceeds that the Department of Industrial Relations had already returned to a Chapter 7 trustee. *See id*. The court analyzed the California statutory scheme and found that the debtor had a right to the excess proceeds and that the security interest attached to that right. *See id*. at *10. The court unequivocally stated that "under the Bankruptcy law, the Debtor's right to the excess fund was

16

property of the bankruptcy estate." *Id.* at *11.

The Defendants' reliance on *In re Irving Tanning Co.* is also misplaced. The issue presented in *Irving Tanning Co.* was whether it was feasible to confirm a Chapter 11 plan that the debtor proposed to fund from the recovery of excess letter of credit funds without an adjudication whether there were any actual excess proceeds that might be available. *See In re Irving Tanning Co.*, No. 10-11757, 2012 WL 3744954 (Bankr. D. Me. Aug. 28, 2012). The Court had no problem finding that the proposed funding mechanism was too speculative and, accordingly, denied confirmation because the plan was not feasible. *See id.* at *2. Here, the Trustee simply seeks the opportunity to adjudicate the amount of excess letter of credit proceeds the Liquidating Trust is owed – a right the Trustee clearly has under California Labor Code §§ 3701.3 and 3701.5. *Id.* To the extent there are any excess Letter of Credit proceeds, the right to recover such proceeds is property of the estate.

**Conclusion**

In sum, the Court finds that it has subject matter jurisdiction over all five counts of the Complaint. The Court also finds that the Complaint states a plausible claim for relief because the California Labor Code's administrative exhaustion requirement is not applicable to this proceeding, and because the Trustee has a right to recover any excess proceeds under the Letter of Credit. For reasons set forth, the Defendants' Motions are denied. A separate order shall issue.

Entered: Apr 26 2016

                                      /s/ Kevin R. Huennekens
                              UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 4/26/16